# IN THE COURT OF APPEALS OF IOWA

No. 22-0656
Filed January 25, 2023

IN RE THE MARRIAGE OF JESSICA RAY JENKINS
AND TYREL JAMES JENKINS

Upon the Petition of
JESSICA RAY JENKINS,
      Petitioner-Appellee,

And Concerning
TYREL JAMES JENKINS,
      Respondent-Appellant.

_____

      Appeal from the Iowa District Court for Bremer County, James Drew, Judge.


      A former spouse appeals a decree of dissolution of marriage.  **AFFIRMED AS MODIFIED AND REMANDED.**


      Terry D. Parsons of Olsen & Parsons Law Firm, Cedar Falls, for appellant.

      Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, and Karen Thalacker of Correll, Sheerer, & Benson, Waverly, for appellee.


      Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Tyrel Jenkins appeals the district court's dissolution decree following his failure to appear at trial. He contends the court's decree exceeds the permissible scope of relief, is not in the children's best interest, and places too much authority over visitation in the hands of his ex-wife, Jessica, and the parties' children. He also claims the court failed to follow the procedures set out in Iowa Code chapter 598 (2021). We find Tyrel did not preserve error on his challenges involving chapter 598. We also find the court did not exceed the permissible scope of relief by granting Jessica sole legal custody. We determine the court should have set a defined visitation schedule that does not delegate decision making authority on Tyrel's visitation to Jessica or the children. Finally, we determine the conditions on Tyrel's visits concerning substance use and testing should be eliminated. Accordingly, we affirm as modified and remand.

## I.     Background Facts & Proceedings

Jessica and Tyrel married in 2005. They share four children, ages sixteen, fourteen, eleven, and ten at the time of trial. Tyler has been previously convicted of domestic abuse assault. The children lived with Jessica since the entry of a no-contact order (NCO) in January 2021 that prohibited Tyrel from contacting her.[1] The incident underpinning the NCO resulted in Tyrel again being criminally charged with domestic abuse assault, although the outcome of that charge was pending at the time of the dissolution trial. There were repeated violations of the

---

[1] The terms of the NCO were modified shortly after it was put in place to allow the defendant access to some parts of the familial property. But the NCO was modified again in June 2021 based on an incident where Tyrel entered the familial home and obtained a handgun. The incident resulted in a contempt filing.

NCO. At trial, Jessica agreed that Tyrel had violated the NCO almost more times than she could count. On one of Jessica's audio exhibits, Tyrel states to Jessica, "Fuck you and your restraining order. How good would it do if I fucking killed you right now?" Additional audio recordings admitted at trial demonstrate a pattern of abuse perpetrated by Tyrel, including one incident in 2018 where one of the children called the authorities because Tyrel was physically harming Jessica. An additional criminal charge was filed as a result of the violations.

Jessica petitioned to dissolve the marriage on April 16, 2021. Her original petition sought joint legal custody and physical care. Tyrel's acceptance of service was filed May 20; he filed an answer as a self-represented litigant on June 6. His answer did not specify what relief he was requesting. This is the only document Tyrel filed before trial.[2]

Trial was held March 17, 2022. Tyrel failed to appear, resulting in the court finding him in default.[3] Jessica testified and submitted exhibits. Her testimony mainly focused on Tyrel's alcohol abuse and his perpetration of domestic violence against her. Based on her testimony, the court allowed Jessica to amend her petition to request sole legal custody.

The court entered the dissolution decree on the same day as trial.[4] It granted Jessica sole legal custody and physical care. The court ordered that Tyrel

---

[2] Contrary to the pretrial order, Tyrel did not file a financial affidavit, witness list, or proposed exhibits.

[3] In another example of a violation of the NCO, Tyrel contacted Jessica the day before the trial and told her to advise her attorney to stop sending him emails, that the trial was a joke, and that he could get the trial continued without any problems.

[4] The district court ordered Jessica's counsel to submit a proposed decree following trial.

could visit the children once a week.[5]  But the decree provided that the children were not required to participate in the visits.  Tyrel was forbidden from consuming any alcohol or illegal substances prior to or during the visits.  Jessica was permitted to request testing to prove sobriety.  If he consumed those substances, the visitation would immediately cease and the children would be returned to Jessica.

On April 14, Tyrel moved to set aside the default dissolution decree pursuant to Iowa Rule of Civil Procedure 1.977.  He filed a notice of appeal the next day.  The district court found that it lacked jurisdiction to rule on his motion due to the notice of appeal.[6]

## II.    Discussion

Tyrel raises several claims on appeal.  First, he contends the visitation framework limits his visits and unduly puts the children in the middle of the parents' disagreements.  He also claims the court exceeded the permissible relief by allowing Jessica to amend her petition at trial.  Tyrel further claims the decree did not meet the requirements of Iowa Code chapter 598, resulting in a record insufficient for review.

### A.    Error Preservation

Jessica contends Tyrel has failed to preserve his claims because he did not object at trial.  "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide

---

[5] While the decree also set out a holiday schedule, the decree also provided that the children were not required to see their father on those holidays.

[6] Jessica asks us to find Tyrel cannot renew his motion to set aside the decree following this appeal.  We decline to do so, as Tyrel's decision to renew the motion is hypothetical.

them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). She argues because Tyrel failed to appear at trial, he could not preserve error on any specific issues. However, "a defaulting party to a dissolution proceeding may seek appellate review on the merits. But, our de novo review will generally be limited to (1) scope of relief granted, and (2) equities of the decree as determined by an examination of the entire record made at trial." *In re Marriage of Huston*, 263 N.W.2d 697, 700 (Iowa 1978). Tyrel contests the visitation and custody provisions of the decree, asserting it wrongly restricts his time with the children. He also claims the relief exceeded the scope sought in the original petition. Thus, those claims fall in the exception to our standard error preservation rules. However, Tyrel's claims alleging the court failed to comply with chapter 598 are procedural. As a result, those procedural claims are not preserved, and we do not consider them.

### B.      Did Relief Granted in the Decree Exceed the Permissible Scope?

Tyrel claims the decree exceeds the proper scope of relief because it provided Jessica with sole legal custody despite her request for joint legal custody in her original petition. We disagree. Iowa Rule of Civil Procedure 1.976 describes the permissible relief upon a party defaulting: "The judgment may award any relief consistent with the petition and embraced in its issues; but unless the defaulting party has appeared, it cannot exceed what is demanded." The second sentence necessarily implies a corollary: If the defaulting party has appeared, the relief can exceed what is demanded. Tyrel appeared and answered Jessica's petition. The court was thus free to award Jessica relief that exceeded her original petition, so

long as it was embraced in the petition's issues.[7] The matter of custody was firmly within the realm of the issues embraced by the original petition—as is the case in any dissolution, the court had to decide between joint and sole legal custody. *See* Iowa Code § 598.41. We affirm the court's order as it pertains to legal custody of the children.

### C.    Are the Visitation Provisions Appropriate?

Tyrel contests the visitation provisions of the decree on multiple grounds. First, he claims the court improperly delegated the authority to decide visitation to Jessica and the children. Second, he contends the conditions placed on visitation related to his sobriety are inappropriate. Finally, he claims the visitation provisions are not in the children's best interests because it places them in the middle of their parents' disputes. We review child visitation orders de novo. *Swift v. Grabill*, No. 18-1926, 2019 WL 1958121, at *1 (Iowa Ct. App. May 1, 2019). Our primary concern is the best interest of the children. *Id.* at *2.

We first address the visitation schedule. The district court ruled:

> To the extent possible with a [NCO] currently in place, the parties will cooperate in determining a visitation schedule that takes the wishes of the children into consideration. The children are not required to attend visitation with Tyrel but Jessica shall continue to encourage the children to spend time with Tyrel at least once a week.

"The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the *court* is convinced such visitations are detrimental

---

[7]Jessica also suggests the court did not abuse its discretion when it granted her motion to amend the original petition, therefore limiting the relief granted to what her petition contained. However, because the court was free to grant relief beyond the petition, we need not decide whether the court abused its discretion when it allowed the amendments.

to the best interest of the child." *In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *3 (Iowa Ct. App. Sept. 23, 2020) (quoting *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966)); *see also Grabill*, 2019 WL 1958121, at *2 (quoting *In re Marriage of Stephens*, 810 N.W.2d 523, 531 (Iowa Ct. App. 2012)) ("It is well established that the district court is the only entity that can modify a custody or visitation order"). Thus, placing visitation at the discretion of either another parent or the children is improper. *Kanetomo*, 2020 WL 5650593, at *3. Here, the court improperly delegated authority to Jessica and to the children to determine whether visitation would occur. We determine such delegation is in error, and we remove it from the court's decree.

Additionally, the court's visitation schedule is insufficiently definite as to the time Tyrel may visit with the children. "The feasible exercise of a parent's right of visitation should be safeguarded by a *definite provision* in the order or decree of the court." *Id.* (emphasis in original). Under the court's decree, Tyrel is only entitled to Jessica encouraging the children to visit him once per week. That is not definite; indeed, it does not entitle him to anything beyond words from his ex-spouse. Thus, we modify the decree to eliminate language delegating authority on visitation to Jessica and the children.

The court also placed several restrictions on Tyrel's visiting time related to the use of alcohol and illegal substances. Tyrel was prohibited from consuming such substances immediately prior to or during visits. If he was consuming those substances, the visit is to immediately cease and the children shall be returned to Jessica. If Jessica suspects Tyrel has consumed any substances, she can require him to take an appropriate test of her choosing. Tyrel claims these restrictions are

unduly burdensome and place the children in the middle of the parents' disputes. Based on previous direction from our supreme court, we agree.

"Conditions related to proof of parental sobriety . . . are disfavored because they are considered demeaning." *In re Marriage of Coutler*, No. 02-0473, 2002 WL 31528589, at *2 (Iowa Ct. App. Nov. 15, 2002) (citing *In re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992)). Such conditions are disfavored, in part, because they permit the other parent to improperly restrict visitation. *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994). Under the decree, Jessica has the unitary power to cancel visits or compel Tyrel to take tests if she suspects he has consumed alcohol. This provision is particularly unworkable because there is a NCO between Tyrel and Jessica—it is unclear how she would develop her suspicions without either one of the parties violating the order or asking children to gauge their father's sobriety, thereby putting them in the middle of a visitation dispute.

We acknowledge that our appellate courts have occasionally found conditions on visitation to be justified.

> Where a father had once failed to return the children after visitation, we approved a condition which prohibited him from removing the children from the state of their residence during visitation. *In re Marriage of Smith,* 471 N.W.2d 70, 73 (Iowa App.1991). Also, where a father admitted he had engaged in acts of exhibitionism, the supreme court agreed conditions could be placed on his visitation rights. *Lamansky v. Lamansky,* 207 N.W.2d 768, 772 (Iowa 1973).

*Rykhoek*, 525 N.W.2d at 4–5.

And visitation may be restricted if it will result in harm to either the children or the other parent. *See id.* at 5; *see also* Iowa Code § 598.41(3)(i).

While the Department of Health and Human Services' (DHHS) child abuse assessments were unconfirmed as to abuse perpetrated by Tyrel, largely due to the investigated altercations between Tyrel and Jessica occurring outside the presence of their children, the exhibits offered at trial paint a different picture. On at least two occasions, the children were present in the home. On one occasion, the parties' youngest daughter called 911 to report that her dad was hurting her mom. Our review of this exhibit demonstrates that while Tyrel did not physically harm the children, the emotional trauma was substantial.[8] And Tyrel's alcohol consumption is concerning.

However, given the language in *Fite* discouraging the type of conditions found in the instant decree and the existence of the NCO between Jessica and Tyrel, we eliminate the language regarding the conditions on Tyrel's visitation concerning alcohol or substance usage and the language that permits Jessica to determine whether Tyrel has been using alcohol or other substances and her ability to request testing. 485 N.W.2d at 664 ("The district court was correct in providing that [the father] should not be permitted visitation with [the child] if he has been drinking excessively. We believe, however, that it is unwise to place in the court's decree any formal procedure for resolving this question or to formalize a right to abort visitations based on the subjective belief" of another person). But we also highlight other language present in *Fite* as follows: If Tyrel "behaves

---

[8] We recognize that domestic violence in the home can have significant long-term negative impacts on children even when they are not the target of the violence. *See, e.g.*, *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa 1997). However, we do not think the children are in danger of physical abuse—which was generally targeted at their mother—when visiting their father. This is so even in the absence of such restrictions.

irresponsibly in the manner specified in the deleted conditions, his conduct may be made the subject of further proceedings in the district court and may be grounds for reduction or elimination altogether of his child visitation rights." *Id.*

We modify the decree to eliminate the conditions on Tyrel's visitation concerning alcohol or substance usage and Jessica's ability to request testing. We remand to the district court for the sole purpose of establishing a set visitation schedule for Tyrel and the children based on the existing record.

### D.    Attorney Fees

Jessica requests appellate attorney fees. We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted). Given the financial positions of the parties, we decline to award Jessica appellate attorney fees.

## III.    Conclusion

We affirm the dissolution decree in all respects except the visitation provisions. On that portion, we modify the decree to eliminate the restrictions on Tyrel's visitation concerning alcohol or substance usage and Jessica's ability to request testing. We eliminate the provisions that allow visitation to take place at the discretion of Jessica and the children. We remand for the district court to establish a definite visitation schedule based on the existing record consistent with this opinion.

**AFFIRMED AS MODIFIED AND REMANDED.**

Vaitheswaran, P.J., concurs; Greer, J., partially dissents.

**GREER, Judge** (concurring in part and dissenting in part).

With only one side of the story before it, I agree with how the district court resolved concerns over visitation for Tyrel Jenkins, who failed to show for the trial date in this dissolution-of-marriage case. So, I disagree with the majority over its determinations that some of the decree's provisions must be removed and the case returned to the district court for further consideration. The majority remanded to the district court to have it establish a set visitation schedule for Tyrel and the children based on the existing record and removed conditions and requirements over Tyrel's alcohol consumption from the decree. Even so, we all agree that an award of sole custody to Jessica is warranted here.

The record developed at trial included only information offered by Jessica, as Tyrel did not attend the trial. But in none of his filings does Tyrel explain his non-attendance. So, on our de novo review, I would find the district court's decision to be appropriate with a few tweaks.

First, the majority concluded the district court "improperly delegated authority to Jessica and the children to determine whether visitation should occur." But I believe the district court set a definitive schedule. It did award Tyrel visitation once each week and set out a holiday/special day schedule but qualified that the children would be encouraged, not required, to go.[9] So, here we have definite provisions for visitation, just no enforceable means to require visitation. *Cf. Thompson v. Fowler*, No. 17-0284, 2017 WL 6513973, at *2–3 (Iowa Ct. App.

---

[9] Addressing a question about supervised visitation, Jessica confirmed that the children would prefer not to be forced to go to visitation, but "if they have to see him, it would be nice if someone was there." It would then be appropriate on remand for the district court to review this request, given the majority's ruling.

Dec. 20, 2017) (finding that undefined visitation only given at the mother's discretion is an impermissible delegation of judicial authority by the district court and reiterating that the "right of visitation should be safeguarded by a *definite provision* in the order or decree" (citation omitted)). As a general statement we typically disfavor placing visitation at the discretion of a parent or child. *See In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *3–4 (Iowa Ct. App. Sept. 23, 2020) (modifying visitation provisions by setting out general time periods for visitation that were not date specific and removing the child's discretion to attend); *see also In re Marriage of Retterath,* No. 14-1701, 2005 WL 6509105, at *3–4 (Iowa Ct. App. Oct. 28, 2015) (removing condition that the father could establish the "time, place, frequency, circumstances, nature and duration of any communication or visitation" with the mother, but retaining the requirement that visitations be supervised and remanding to set specific visitation parameters). Thus, I agree with the majority that the option of the children to avoid visitation should be removed from the decree, but I still believe conditions are necessary under this record to terminate a visitation if Tyrel is intoxicated.

To me, disfavor does not imply total rejection. And in *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966), while suggesting a district court should not make visitation contingent on consent from one parent, the supreme court also qualified the discretionary option by noting "the right of access to one's child[ren] should not be denied *unless the court is convinced such visitations are detrimental to the best interest of the child[ren].*" (Emphasis added) (citation omitted).[10] In *Kanetomo*,

---

[10] In *Smith*, the two older children (ages seventeen and nineteen) were not required to attend visitations based upon their history with the father, and he did not seek

2020 WL 5650593, at *3, factors influencing the visitation were the father's lack of contact with the children and the mother's failure to support his relationship with the children. Unlike *Kanetomo*, here the district court addressed the safety and health of the children by providing some discretion to the mother to terminate visitation if Tyrel was consuming alcohol. This was an option selected, even though other witnesses suggested only a supervised visitation format.[11] From the record at the trial, we know Tyrel had violated the no-contact order the day before trial and was described as a potentially violent person, even pointing guns at Jessica during disputes. Jessica's testimony was as follows:

> Q. Do you believe that he's a danger to you? A. Yes.
> Q. Do you believe he's a danger to the children? A. Yes.
> Q. Have many or most of these incidents occurred in the presence of the children? A. Yes.
> . . . .
> Q. And do you believe that Mr. Jenkins is an alcoholic? A. Yes.
> Q. And he drinks every day? A. Yes.
> Q. And he is intoxicated, you believe, every day? A. Yes.
> . . . .
> Q. And I mean, do you—do you believe it is possible that he could kill you and the children and—or all of you? A. Yes.
> . . . .
> Q. Is he violent only when he's not [sic.] been drinking, or is he also violent when he's sober? A. Both.

---

visitation privileges as to them. 142 N.W.2d at 424. But as to the two younger children (ages eight and ten), because the father had made significant changes to his lack of emotional control, the court removed the requirement to let the mother restrict visitations. *See id.*

[11] It is not surprising that a parent's excessive use of alcohol and intoxication might make children afraid to be around them. *See Noecker v. Cloyd-Hirz*, No. 21-1447, 2022 WL 1664076, at *1 (Iowa Ct. App. May 25, 2022). Or that watching a parent abuse the other parent, which is emotionally harmful, might chill the children's desire to visit the abuser parent. *See In re Marriage of Daniels,* 568 N.W.2d 51, 54–55 (Iowa Ct. App. 1997).

Further, Jessica produced evidence of Tyrel's threat to disregard the no-contact order to "kill her." The majority rightly characterizes Tyrel's behavior as a "pattern of abuse." The long-range negative implications for the children's general well-being resulting from a parent's abusive behavior are presumptive. *See Daniels*, 568 N.W.2d at 54–55.

In particular, I disagree with the majority eliminating the language in the decree that allowed Jessica to cancel visitation if Tyrel is intoxicated. *See In re Marriage of Fite*, 485 N.W.2d 662, 664 (Iowa 1992) (eliminating language in the decree setting out a formal procedure to resolve the question of sobriety or allowing the child to abort visitation based upon the child's subjective belief of intoxication). I agree that the condition to take a test is not appropriate, but if Jessica can determine that Tyrel has been drinking excessively, she should be able to block or terminate the visit with the children for their safety. *See id.* (noting "the district court was correct in providing that [the father] should not be permitted visitation with [the child] if he has been drinking excessively"). And as pointed out by the majority, with a no-contact order in place, Jessica's ability to assess the danger is difficult; thus, with the ages of the children here, it is appropriate to consider their observations or require someone to supervise these visitations.

Evidence presented at the trial related observations of the children that their father was passed out or extremely intoxicated. As a practical matter, Tyrel's behavior has placed the children in a position of having to gauge when it is unsafe for them to be in contact. This behavior necessitated the children leaving Tyrel's care on their own since one child has a driver's license. Likewise, one exhibit described a motor vehicle accident when Tyrel hit a parked car while intoxicated

with the children in the vehicle. Thus, there are reasons to allow for conditions over Tyrel's alcohol consumption to protect the children. *See In re Marriage of Rykhoek*, 525 N.W.2d 1, 5 (Iowa Ct. App. 1994) (concluding conditions may be placed on a parent's visitation rights "only when visitation without the placement of conditions is likely to result in direct physical harm or significant emotional harm to the child[ren]"). The conditions must be established with the best interests of the children in mind. *Id.*

Given this record, I would find that the condition to refrain from alcohol use and cancel visits because of it be kept in the decree with the option to terminate visitation if the children report they feel unsafe or have observations similar to what they have already experienced by way of extreme intoxication. I give deference to the district court's findings on this issue given its ability to assess Jessica's demeanor and testimony. *See In re Marriage of Kirchoff*, No. 01-0489, 2002 WL 571790, at *2 (Iowa Ct. App. Feb. 20, 2002) (giving deference to the district court's findings that restrictions on visitation, such as not drinking alcohol and supervision, should be implemented).

I would affirm the district court on all provisions of the decree, except for the delegation of decision over visitation to the children and the option for Jessica to require testing for sobriety.