DOROTHY MARIE SMITH, appellee, v. JOHN P. SMITH, appellant.

No. 52045.

(Reported in 142 N.W.2d 421)

MAY 3, 1966.

Ted Sloane, of Des Moines, and Roger S. Plunkett, of Austin, Minnesota, for appellant.

Gamble, Read, Riepe, Martin & Webster, of Des Moines, for appellee.

STUART, J.—Appellant has been prevented from visiting his children under order of court since June 1958. He seeks to secure visitation privileges. Custody is not an issue.

The parties were married in 1945. At the time of hearing on appellant's application in 1965, the ages of their four children were: Diana 19, Arthur 17, Nancy 10 and Kathleen 8. In February 1958 appellant physically abused his wife and son. As a result of these episodes he was admitted to Broadlawns Hospital as a mental patient. Ten days later he was committed to the state mental hospital at Clarinda where he remained until June 28, 1958. Three days before appellant was discharged, appellee filed a petition for separate maintenance and secured an order restraining appellant from seeing appellee or his four children. On March 30, 1959, appellee's petition for separate maintenance was granted, the restraining order made permanent and appellant was denied any right of visitation.

On November 3, 1959, appellant sought to have the decree modified to include visitation rights. The court denied the application January 6, 1960. A little over a year later, appellant

filed a second application to modify the decree and appellee counterclaimed for absolute divorce. She was granted a divorce January 8, 1962, following a contested hearing. The divorce was based on the physical abuse which occurred in February 1958. Appellee was given sole custody of the children, appellant was denied any visitation rights and was not required to make child support payments. The restraining order remained in force.

On August 25, 1964, appellant again filed an application to modify the decree seeking the right of visitation. The trial court denied the application following hearing. He held there was no material change in circumstances since the date of the original decree which would "under Iowa law, render a modification of the decree, relative to visitation rights, expedient". He also held "visitation would not be in the best interest of the minor children". This appeal has been taken from that ruling.

I. Although the trial court awarded the divorce on the basis of acts which occurred in 1958, he determined custody, support and visitation on conditions as they existed at the time of the decree of divorce. We must therefore consider the change in circumstances which have occurred since the hearing on the divorce decree. We must also keep in mind we are considering only visitation rights. There is a great difference between an application to modify a decree as to permanent custody and an application for reasonable visitation privileges. It seems readily apparent a much more extensive change of conditions would be required to support a change of custody than would be necessary to justify a change of visitation rights.

We have not made a clear expression of this distinction, but it has long been recognized in other jurisdictions. The following cases specifically deal with attempts to modify visitation privileges in divorce decrees. In Gonyea v. Gonyea, 232 Ore. 367, 372, 375 P.2d 808, 810, the court said: "There is no constant or standard quantity of change which will qualify. The amount of change necessary to justify a modification of a decree varies with the facts of the individual case." It also said: "We are of the opinion that the mere putting into operation of a decree may in some cases qualify as a change of circumstances."

The Illinois court in Blonsley v. Blonsley, 52 Ill. App.2d

391, 393, 202 N.E.2d 70, 72, quoted with approval from Ruberts v. Ruberts, 4 Ill. App.2d 134, 123 N.E.2d 737, as follows: " 'We do not believe that under the particular facts in the case before us the order of the trial court materially abridged the plaintiff's rights to custody of the children. Certainly the chancellor should be allowed broad discretion when the question of altering visitation privileges is involved.' "

Other cases in which the distinction between custody and visitation are recognized are: Syas v. Syas, 150 Neb. 533, 34 N.W.2d 884; Lamb v. Lamb, 348 Mich. 557, 83 N.W.2d 323; Evans v. Evans, 195 Miss. 320, 15 So.2d 698, 699; McCown v. McCown, Fla. App., 167 So.2d 250; Bogardus v. Bogardus, 102 Cal. App. 503, 283 P. 127; Garner v. Garner, 143 Okla. 183, 288 P. 298; Felker v. Felker (Tex. Civ. App.), 216 S.W.2d 669. See also 27B C. J. S. 541, Divorce, section 317(2).

We believe the changed conditions here are sufficient to support an award of visitation privileges. In addition to the passage of time, material changes have taken place in the conditions surrounding appellant. In 1961 appellant refused to recognize he had a mental problem and was inclined to blame his trouble on his wife and in-laws. Dr. Sidney L. Sands, a psychiatrist, examined him at the request of appellee's attorney in September 1961. He concluded "Mr. Smith does not at this time suffer from any gross mental illness, but that the residuals of his previous psychosis and his general personality characteristics limit his adaptive capacity, especially as regards his ability to cope with emotional stresses and frustrations. I cannot be quantitatively precise in assaying this, but feel that the ordinary stresses of marital life could well be beyond his ability presently to handle and where grosser incompatibilities exist it would be impossible for him to cope with them."

He found no "absolute reasons on psychiatric grounds for his not seeing his children", but felt the success of visits would depend "upon the attitude of the children themselves, the wife *and* Mr. Smith."

He was reexamined by Doctor Sands at the request of appellee's attorney on October 30, 1964. In Doctor Sands' report, he said:

"Mr. Smith was most cooperative with all phases of this examination and he seemed free of the tension, hostility and defensiveness we noted on previous examination. He accepted the situation realistically and was willing to face the implications of this evaluation. His verbal productions were calmly produced and the flow of associations was well organized, without the type of disturbance noted in 1961. It would certainly appear in the interviewing session that he has regained much integration and is now functioning much more adequately.

"Significant in the interval history is Mr. Smith's report regarding his marriage and business. He remarried in June 1962, and described this relationship as a very happy one for both of them. He claims he has established a business doing public accounting and that he is able to report a most satisfying growth in the development of his venture. In January 1963 he was the victim of an auto accident. This kept him from his work at a somewhat critical time, but he apparently adjusted well to the stress and maintained his stability.

"The psychological test results are particularly interesting because they are qualitatively similar to those reported in 1961, but they show quantitative shifts in the direction of significant improvement. Many of the old sensitivities remain, but they are less intense and he is better able to adjust to those than previously. Emotional control is improved and there is less contamination of his perceptions with subjective content. In the light of his long-range history and the 1961 findings, I would tend to regard these present findings as definite evidence of improved self-control and thinking."

In the divorce decree in January 1962, the court said: "Child visitation imposes a larger problem. The court's own observation is persuasive to him that the defendant is a man of uncertain temperament and instability and his actions in substantially failing to contribute to support his children gives the court great doubt as to the sincerity of his professed desire to visit. The two older children have no desire to visit their father. Under the circumstances the defendant appears to have given up expectations of recapturing their affections. Although the matter of visitation by the two younger children poses some

difficult problems, the court finds that the plaintiff and all of her children constitute one family unit, and that for the good of each member it would be impossible to contrive any means of visitation which would not result in harm to the whole family and quite possibly to several if not all of the members. In this regard the court feels the desires of the plaintiff and the defendant should be totally disregarded and only the ultimate best interest of the children considered. Visitation under the circumstances which would have to exist would not be in said best interest."

We are here concerned only with visitation with the two younger children. If the two older children do not wish to visit their father, they should not be compelled to do so. If they change their minds, they are old enough to make their own arrangements. Appellant does not seek visitation privileges with his two older children.

It is obvious there has been considerable change in appellant's temperament and self-control. Present conditions indicate these factors should not stand in the way of visitation privileges. It remains for us to determine whether the best interest of the two younger children will be served by permitting or denying their father the right to visit with them.

The main stumbling block seems to be the attitude of appellee. She apparently went through some difficult times with appellant and her bitterness toward him is understandable. Through her own hard efforts and superior abilities and the aid of her brother-in-law, she has done a very commendable job of rearing these four children. She and her children are comfortably situated and she has no desire to have anything happen to change it. She has no confidence in appellant or his ability to earn money and apparently is still afraid of him. She does not want him to have a thing to do with the children and has carried this attitude over to the paternal grandparents, uncles, aunts and cousins.

We are not convinced the best interest of the children is served by letting them grow up under the exclusive influence of their mother and her attitude without even a chance to become acquainted with their father. His persistent attempts to obtain

visitation rights are testimony as to his interest in them. Appellee summarizes the attitude of the two younger children as follows: "I testified on February 24, 1963, that the two younger children had no mental block against their father. I testified that the children were glad to have the money for the different presents during the holidays and birthdays, although this has not always been so and it has been worked at. The children have not been conditioned in a way of being afraid of seeing their father. They stated they would like to see their father but it is that they want to see their father like any small child who did not have a father."

We are very reluctant to bar a parent from all contact with his children. Appellee has cited no cases in which we have done so. In Fitch v. Fitch, 207 Iowa 1193, 1197, 224 N.W. 503, we say:

"Visitation or the denial thereof should not be made to appease one parent or punish the other. Such right of visitation should be allowed or denied, according to what is best for the child. Its welfare must receive paramount consideration. Bedolfe v. Bedolfe, 71 Wash. 60 (127 Pac. 594); Wilkins v. Wilkins, 84 Neb. 206 (120 N.W. 907); Waldref v. Waldref, 135 Minn. 473 (159 N.W. 1068). Unless these visitations with the father will in some way injure the child, they are not to be prohibited, under the facts and circumstances of this case. The associations between father and daughter should not be terminated merely because alimony is not paid. The good there is in the father ought to be afforded the child, and in addition to that, the little girl is entitled to have whatever benefit there may be in the continued acquaintance and association with her grandparents. Denial of the father's visitation may make impossible or unpleasant such desirable relationship with the grandparents."

In Willey v. Willey, 253 Iowa 1294, 1302, 115 N.W. 2d 833, 839, we say:

"The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child. In the absence of extraordinary circum-

stances a parent should not be denied the right of visitation. It is a right which, unless specifically denied by the court, can be enforced by right of habeas corpus. Nelson on Divorce and Annulment, supra, section 15.08, page 226, and section 15.26, page 274; Townsend v. Townsend, 205 Md. 591, 109 A.2d 765, 768; Commonwealth ex rel. Firestone v. Firestone, 158 Pa. Super. 579, 45 A.2d 923.

"The feasible exercise of a parent's right of visitation should be safeguarded by a definite provision in the order or decree of the court awarding custody of the child to another person. Walden v. Walden, 250 Ky. 379, 63 S.W.2d 290; Chadwick v. Chadwick, 275 Mich. 226, 266 N.W. 331; Perr v. Perr (Mo. App.), 205 S.W.2d 909.

"In Nelson on Divorce, supra, section 15.26, at pages 274 and 276, it is stated: 'The right of visitation is an important, natural and legal right, * * *.' The right should be recognized by the court in custody cases and the 'order should not make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, * * * thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody.' On this proposition many late cases are cited, including McCourtney v. McCourtney, 205 Ark. 111, 168 S.W.2d 200; Clark v. Clark, 177 Okla. 542, 61 P.2d 28; and Sweat v. Sweat, 238 Iowa 999, 29 N.W.2d 180."

Other cases which disclose the same attitude concerning visitation rights are Jackson v. Jackson, 248 Iowa 1365, 85 N.W. 2d 590, 597, and Burrell v. Burrell, 256 Iowa 490, 127 N.W.2d 78, 81.

Appellee offered the testimony of Dr. Paul R. Dingman, Director of the Des Moines Child Guidance Center. In response to a long hypothetical question embodying the facts in this case, he expressed the opinion it would not be advisable for the father to have the right to visit. He based his opinion on the importance of establishing responsibility for a child's rearing in a single entity. He testified: "The well-being of the children and their potential for growth being the major concern, I would advise against a father or mother being permitted to visit the

children when whoever had the custody, control and responsibility did not want it. I would make an exception in stating a general principle if the court set down specific times, places and supervision instances."

Doctor Sands stated in his report: "Taking all things into consideration it would be difficult for me to recommend against visitation rights on the basis of the examination by itself. This is not to say that we fail to find evidence of psychopathology, but that what we have found must be viewed in the light of Mr. Smith's acquired strengths and his apparently good adjustment in his present life-situation. It will be necessary to judge the propriety of visitation rights on grounds which include, but extend beyond the matters deriving more strictly from this examination. These would include the present attitudes of the children themselves and their mother. If the former are or have been conditioned against seeing their father, then visitation, if forced upon them, could be distressing to all parties, including Mr. Smith. On the other hand, if the children have any interest in seeing their father, then, with some effort at planning the visits, a more successful course might well be achieved.

"If visitation is granted, the contact should be initially brief, on neutral ground and in the presence of sympathetic, but unprejudiced third parties responsive to the delicacies of such a situation. The feelings of the children's mother are understandable, but she must herself attempt to be cognizant of Mr. Smith's position and the future attitudes of the children should they ever conclude that she prevented them from seeing their father on grounds of personal malice. I believe the ultimate decision of the court would naturally rest upon consideration of all these elements and more. For my part, our examination does not weigh as heavily against Mr. Smith as it may have in 1961, and it might justify giving a measure of support to his petition."

■ We conclude the best interest of the two younger children will be served if appellant is given limited, supervised rights of visitation at this time. Appellee is intelligent and devoted to her children. We trust she will see the importance of preparing the children properly for the visits and will try to

conceal the animosity she feels toward appellant. For the good of all concerned, every effort should be made to make the visits as pleasant as possible. All parties stand to gain from a less hostile relationship. Appellant was not responsible for his acts when mentally ill. Appellee should make an effort to understand this.

It is our opinion appellant should be granted the right to visit with his two younger children one weekend per month, four hours on Saturday and four hours on Sunday, the specific weekend and times to be fixed by the trial court after consultation with the parties. Until further order of court, the visits shall take place in the presence of an impartial third party to be selected by the parties hereto. In the event they are unable to agree, the selection shall be made by the district court.

The case is reversed and remanded for judgment in accordance herewith.—Reversed and remanded.

All JUSTICES concur.