# IN THE COURT OF APPEALS OF IOWA

No. 19-2008
Filed September 23, 2020

IN RE THE MARRIAGE OF NICOLE YVONNE KANETOMO
AND NICHOLAS DREW KANETOMO

Upon the Petition of
NICOLE YVONNE KANETOMO,
        Petitioner-Appellee/Cross-Appellant,

And Concerning
NICHOLAS DREW KANETOMO,
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Patrick R. Grady,

Judge.


        Parties appeal and cross-appeal the district court's modification ruling.

**AFFIRMED AS MODIFIED.**



        Dana A. Judas of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids,

for appellant.

        Richard F. Mitvalsky of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for

appellee.



        Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

Nicholas Kanetomo (Nick) appeals, and Nicole Kanetomo cross-appeals, a decree modifying a dissolution-of-marriage decree. Nick argues the court erred in not awarding him joint legal custody and the modification to the visitation provisions of the decree "are so minimal as to be effectively meaningless." Nicole argues the court erred in finding Nick met his burden to warrant any modification in visitation. Nick requests an award of appellate attorney fees.

## I. Background Facts and Proceedings

The parties married in 2005. The marriage produced two children—N.C.K., born in 2006, and N.L.K., born in 2009. In its 2012 decree of dissolution of marriage, the district court entered the following findings:

> Nicole has provided primary care for both of the children. During the marriage [Nick] was in the United States Army. There were long periods of time during which [Nick] was deployed and necessarily away from Nicole and the children. He questioned the paternity of both boys. During the boys' young lives there was at least one period of time when [Nick] was not able to have contact with the boys for more than a year. The military granted him a 30 day leave. He chose to spend his leave with his new girlfriend in North Carolina. He didn't spend any part of that month with the boys. [Nick] concedes that [N.L.K.] does not know him. [Nick's] choices since separating from the Army have not improved the relationship between him and the children. During the pendency of the dissolution, [Nick] asked to relinquish his parental rights. Because the children are very young and [Nick] lives far from the children, the relationship will have to develop gradually. The court finds that Nicole should continue as the sole legal custodian and primary caretaker of the children.

The court ordered that Nick have visitation upon mutual agreement of the parties, which would occur in Iowa unless otherwise agreed, and that he be entitled to no less than one phone call with the children per week.

Currently, Nicole lives in Cedar Rapids with her husband, Robert Blevins, their eight-year-old son, and N.C.K. and N.L.K. Nick continues to reside in North Carolina with his wife of four years, Danielle. They share two children. Nick started making regular trips to Iowa to see N.C.K. and N.L.K. in 2014 or 2015. Now, Nick comes to Iowa two or three times per year and stays four or five days. Nicole allows Nick to spend time with the children when it is convenient based on her schedule and the children's activities. Nicole supervises each visit. Nick has never been allowed to transport the children and has never had them overnight. The older child discovered Nick is his father via the internet. The younger child does not know Nick is his father. Nicole has advised Nick she only wants the children to know him as a friend. Nick believes Nicole intentionally places obstacles in the way of him being able to visit the children. While the children's surname has never been legally changed, Nicole encourages them to use the surname she obtained upon remarriage, Blevins. Nicole does not share any information about the children's health, education, or extracurricular activities with Nick.

N.C.K. is twelve and N.L.K is ten. N.C.K. is an active young boy who participates in various activities and has a busy schedule. He does well in school. N.L.K. is also involved in various activities and does well in school. N.L.K. has medical and behavioral problems, and takes medication for his condition.

In 2018, Nick filed a petition to modify the custodial and visitation provisions of the dissolution decree, noting his service in the military had ended and he obtained a permanent residence. The matter proceeded to a trial in 2019. At trial, Nick requested the decree be modified to provide him with joint legal custody and additional visitation encompassing a ten-day visitation in both the spring and fall,

most of the summer, alternating the Thanksgiving and Christmas holidays, and two video calls with the children per week. Nicole resisted modification.

In its modification order, the court concluded the emergence of Nick's post-decree desire to establish a relationship with the children did not amount to a change in circumstances sufficient to modify legal custody and modification of legal custody would not be in the children's best interests given their integration into their blended family and the fact that Nicole has been the children's sole legal custodian for nearly a decade. However, the court clarified that Nick is entitled to "access the children's educational information without a change in the custody provisions of the decree." *See* Iowa Code § 598.41(1)(e) (2018); *In re Marriage of Hute*, No. 17-0046, 2017 WL 3283382, at *3 (Iowa Ct. App. Aug. 2, 2017). The court accordingly enlarged the decree "to provide that Nick shall have legal access to information concerning the children, including but not limited to medical, educational and law enforcement records without the necessity of a release from Nicole."

As to visitation, the court concluded the "events have shown that the Court's goal of any meaningful visitation has been frustrated by the restrictions placed upon Nick by Nicole." The court modified the visitation provisions of the decree to provide Nick with unsupervised and overnight visits with N.C.K. when he visits the children in Iowa and "N.L.K. may join N.C.K. on these visits so long as Nicole consents." The court also ordered that, upon N.C.K.'s completion of eighth grade, Nick shall be entitled to have visitation with N.C.K in North Carolina for at least one but not more than two weeks so long as the child consents. Nick appeals and Nicole cross-appeals.

**II.     Standard of Review**

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo.  Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them.  Iowa R. App. P. 6.904(3)(g).  The best interests of the children is our primary consideration.  Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

**III.     Analysis**

A.     Legal Custody

Nick argues the court erred in not awarding him joint legal custody of the children.

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.  The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Nick largely cites Nicole's interference with his access to and relationship with the children as a substantial change in circumstances warranting modification of legal custody.  At trial, Nick generally focused on Nicole only allowing visitation when it was convenient for her, insisting on being present for visits, not following

the phone-visit schedule to a tee, and not providing him information about the children. But these are not matters that would be remedied by a change in legal custody. The proper avenues for dealing with these issues were to clarify Nick's right to access information and modifying the visitation provisions of the decree, both of which the district court utilized. Thus, modification of legal custody was not an expedient matter. *See id.*; *see also Expedient*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/expedient (defining expedient as "suitable for achieving a particular end in a given circumstance"). Also, the clarification of his rights and modification of visitation rendered the cited changes in circumstances temporary, not more or less permanent, which in turn rendered modification of legal custody inappropriate. *See Frederici*, 338 N.W.2d at 158. Finally, we wholly agree with the district court that the children's best interests do not mandate modification of legal custody; the children have thrived under Nicole's legal custody and no evidence was presented that would change any time soon. We affirm the district court's refusal to modify legal custody.

B.    Visitation

Nick argues the modification to the visitation provisions of the decree "are so minimal as to be effectively meaningless." He largely complains his visitation with N.L.K. impermissibly remains at Nicole's discretion and his visitation with N.C.K in North Carolina is inappropriately contingent on the child agreeing. On cross-appeal, Nicole argues the court erred in finding Nick met his burden to warrant any modification in visitation.

As Nick sought the modification of the visitation schedule, he "must establish by a preponderance of evidence that there has been a material change

in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). "[A] much less extensive change in circumstances is generally required in visitation cases" than the change necessary to modify child custody. *Id.* at 96. "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Id.*

We agree with the district court that Nicole's restrictions on visitation have frustrated Nick's opportunity to engage in meaningful visitation and amount to a meaningful change in circumstances that render modification of visitation appropriate.

We also agree with Nick that neither Nicole nor the children should have discretion over whether visitation occurs. "The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless *the court* is convinced such visitations are detrimental to the best interest of the child." *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (emphasis added) (citation omitted). "The feasible exercise of a parent's right of visitation should be safeguarded by a *definite provision* in the order or decree of the court awarding custody of the child to another person." *Id.* (emphasis added) (citation omitted). An order concerning visitation

> should not make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, . . . thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody.

*Id.* (alteration in original) (citation omitted). This court recently repeated our supreme court's position in *Smith* and noted "[d]elegation of visitation parameters to the opposing party is particularly troublesome." *In re Marriage of Retterath*, No 14-1701, 2015 WL 6509105, at *4 (Iowa Ct. App. Oct. 28, 2015).

In light of the circumstances of the parties, we find it necessary to modify the visitation schedule as follows. Because Nick does not complain about it, we do not disturb the district court's modification of Nick's weekly video contact with the children. As to in-person visitation, Nick shall be entitled to no less than four regular visits with the children in Linn County, Iowa, or contiguous counties, per year, which he may exercise on a quarterly basis.[1] Nick is entitled to no less than five days per visit, beginning at 8:00 a.m. the first day and ending at 5:00 p.m. the final day. During said visits, Nick is entitled to have N.C.K. with him on a full-time basis, including overnight. As to N.L.K., Nick shall be entitled to visitation time for a period of no less than four continuous hours per day, but not overnight. Nick has sole discretion as to which four hours he will have visitation time with N.L.K.; it shall not revolve around Nicole's work schedule, or her husband's. In order to assist N.L.K. transition into each visitation, Nicole or her designee shall be entitled to attend no more than the first hour of each four-or-more-hour visit at which N.L.K. is in attendance. During his visits, Nick shall be responsible for transporting the children to and from school and extracurricular activities when they are in his care. Nick shall provide Nicole with no less than sixty days' notice of when he intends to exercise his visits and, so long as he does, Nicole has no discretion to deny his

---

[1] Nick shall be entitled to one visit occurring in each of the chronological three-month quarters of the year.

requested visitation dates. However, Nick is not entitled to visitation with the children during their spring break. If Nick does not give sixty days' notice, then Nicole shall be entitled to cancel the quarterly visitation. As to Nick's visitation in the final quarter of the year, he shall be entitled, but is not required, to exercise it in the vicinity of *either* Thanksgiving or Christmas. Said visitations shall also occur in Linn County, Iowa or a contiguous county. As to Thanksgiving, the visit must either end or begin at 8:00 a.m. on Thanksgiving Day. As to Christmas, the visit must either end or begin at 8:00 a.m. on Christmas Day. Nick shall not be entitled to choose to exercise his last quarterly visitation in the vicinity of the same holiday in consecutive years. The foregoing schedule is the minimum Nick is entitled to. The parties may agree to additional and/or less-restrictive visitation.

Given the circumstances, we choose to address some other matters. At this point in time, we find it premature to authorize visitations to take place in North Carolina or otherwise elsewhere than Linn County or contiguous counties. As time marches on, unsupervised and overnight visitation with N.L.K. may be appropriate, as may be allowing Nick to exercise his visits with one or both children in North Carolina or elsewhere. The reasons for not allowing visitations other than in Linn County and contiguous counties at the present time include (1) Nick's limited experience with and lack of evidence of his understanding of N.L.K.'s medical conditions and resulting needs and (2) the lack of a current meaningful relationship between Nick and the children. Evidence of significant improvement in those areas would amount to a material change in circumstances sufficient to warrant a future modification of the visitation provisions to provide less restrictions.

### C. Appellate Attorney Fees

Finally, Nick requests an award of appellate attorney fees. *See* Iowa Code § 598.36; *Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to Nick. Costs on appeal are assessed equally between the parties.

## IV. Conclusion

We affirm the district court's decision to modify legal custody. We agree modification of visitation was appropriate, but we modify the visitation schedule imposed by the district court. We deny Nick's request for appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**