# IN THE COURT OF APPEALS OF IOWA

No. 23-0136
Filed July 13, 2023

IN RE THE MARRIAGE OF BRIAN LEIGH WELTZ
AND CHELSEY WELTZ

Upon the Petition of
**BRIAN LEIGH WELTZ,**
        Petitioner-Appellant,

**And Concerning**
**CHELSEY WELTZ,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Hardin County, John J. Haney,

Judge.


A husband appeals the physical care and spousal support provisions of the

parties' dissolution decree. **AFFIRMED.**


C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellant.

Dani L. Eisentrager, Eagle Grove, for appellee.


Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Brian Weltz appeals the physical care and spousal support provisions of the parties' dissolution decree. We affirm the district court's award of physical care of the parties' two children to Chelsey Weltz. We also affirm the provision that requires Brian to pay spousal support of $1000 per month for thirty-six months. We determine Chelsey is entitled to appellate attorney fees of $5650.

## I.      Background Facts & Proceedings

Brian and Chelsey were married in 2016. They have two children, born in 2017 and 2020. The parties met while they were both working at a retail store in Belmond. Brian was in the retailer's management program, which required him to move from store to store. The family was in Decorah for two years, Tama for two years, Red Oak for three years, and then Eldora. Brian became the manager of the store in Eldora, where his parents live. Chelsey worked part-time for the retailer during the marriage and took care of the children.

The parties separated in March 2022, and Brian filed a petition for dissolution of marriage. Chelsey moved back to Belmond, where her family lives. She had concerns about Brian's use of alcohol and other substances. An order on temporary matters, filed on May 11, granted the parties joint physical care, with each party having the children for one week at a time. The temporary order stated, "Neither party shall consume alcoholic beverages during their visitation period with the children." Brian was ordered to pay $655.89 per month in temporary child support.

The dissolution hearing was held on November 9 and 10.[1] Brian was forty-one years old at the time of the hearing. He has a base salary of $80,782 but also receives bonuses. His total income in 2021 was $99,929. Chelsey was thirty-six years old at the time of the hearing. She earned $6133 in 2021 as a part-time cashier. If Chelsey worked full time, she would earn about $30,300 per year.

Brian had a substance-abuse evaluation that diagnosed him with mild alcohol use disorder and cannabis use disorder in early remission. He participated in a short-term outpatient program. Brian testified that he continued to drink alcohol while the children were in his care. He stated he did not believe the temporary order prohibited him from drinking after the children were asleep. He stated he had not used marijuana gummies "in a while."

The district court granted Chelsey physical care of the children. Brian was awarded visitation on alternating weekends, alternating weeks in the summer, and alternating holidays. He was ordered to pay child support of $1421 per month. Brian was also ordered to pay spousal support of $1000 per month for thirty-six months. Brian appeals the physical care and spousal support provisions of the parties' dissolution decree.

II.     **Standard of Review**

We review dissolution of marriage decrees in equity. *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999). In equitable actions, our review is de novo. Iowa R. App. P. 6.907. "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601

---

[1] Prior to the dissolution hearing, the parties stipulated to joint legal custody of the children and a division of marital property.

N.W.2d at 50–51 (alteration in original) (citation omitted). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

### III. Physical Care

Brian claims the district court should have placed the children in his physical care, rather than in Chelsey's physical care. The parties agreed joint physical care was not feasible based on the distance between their residences.

The court considers the factors in Iowa Code section 598.41(3) (2022) and *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974), in determining a physical care placement in the best interests of children. Courts look for a placement that will best promote the long-term physical and emotional health of the children. *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). Each decision is based on the unique facts of the case. *Id.* "In child custody cases, the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(o); *In re Marriage of Roberts*, 954 N.W.2d 757, 760 (Iowa Ct. App. 2020).

The court determined Chelsey was the primary caregiver for the children during the marriage. The court also found, "Chelsey shows a greater capacity to communicate concerning the children's needs than Brian." The court noted Brian

took one of the children to the doctor after the first day of trial but did not tell Chelsey about it.[2] The court stated:

> Brian also made the unilateral decision to have the children baptized, testifying that, "I took the liberty." He gave no consideration to Chelsey's opinion or any of the concerns she raised. Chelsey's testimony and the documentary evidence provided tends to support Chelsey's contentions in this regard. Brian has also enrolled the children in various activities without communication or consultation with Chelsey. He attempted to interfere with Chelsey's enrollment of [the younger child] in preschool in Belmond. The Court also watched him roll his eyes and make frequent dramatic facial expressions during Chelsey's testimony at trial. He gave no credit to Chelsey for the children's growth and development when in her care.

The court furthermore noted, "Brian presented as angry and resentful at times during trial. His texts and other correspondence also support this observation. He gave Chelsey little or no credit for raising smart and well-developed children."

Although we are not bound by the district court's factual findings, we give weight to the court's credibility findings. *See* Iowa R. App. P. 6.904(3)(g). "There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'" *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). We give weight to the district court's finding that Chelsey was a more credible witness than Brian. *See* Iowa R. App. P. 6.904(3)(g).

We agree with the district court's conclusion that the children should be placed in Chelsey's physical care. Brian's unilateral decisions about the children,

---

[2] The court mistakenly stated the child had been taken to the emergency room, but this does not change the fact that Brian did not inform Chelsey the child needed medical attention for a fever and sore throat.

his statements that Chelsey did not contribute to the development of the children, and his attitude during the trial, show he did not respect Chelsey. Due to this lack of respect, he is less likely to support Chelsey's relationship with the children. It also contributes to the communication problems between the parties. In addition, there are also concerns because Brian continued to drink alcohol while the children were in his care although the temporary order specifically stated, "Neither party shall consume alcoholic beverages during their visitation period with the children."

## IV.     Visitation

Brian raises an alternative argument, claiming that if the children are not placed in his physical care, he should have more visitation with the children. He asks to have the children over all of their summer vacation from school, with Chelsey having visitation on alternating weekends.

Generally, liberal visitation with the noncustodial parent is in the children's best interests. Iowa Code § 598.41(1)(a); *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). "The feasible exercise of a parent's right of visitation should be safeguarded by a definite provision in the order or decree of the court awarding custody of the child to another person." *Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (citation omitted); *see also In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *4 (Iowa Ct. App. Sept. 23, 2020). A court should fashion a visitation schedule that is in the children's best interests. *In re Marriage of Hansen*, 886 N.W.2d 868, 875–76 (Iowa Ct. App. 2016).

We determine the summer visitation schedule set out in the parties' dissolution decree is in the children's best interests. The decree stated:

During the summer when school is not in session, the parties will alternate custody weekly. The parties shall use a local school calendar for the area the children reside in for reference to start summer visitations. These visitations shall begin on Friday at 5:00 p.m. and end the following Friday at 5:00 p.m. The party beginning the weekly visitation shall be responsible to pick the children up at the other party's residence.

This schedule gives both parties time with the children over the summer, allowing both parties an opportunity to go on vacation or engage in other activities with the children. We affirm the district court's visitation schedule.

## V.     Spousal Support

Brian claims the district court should not have awarded spousal support to Chelsey. He states she can support herself by working full time and she does not need an award of spousal support. Brian contends Chelsey does not need to have a period of reeducation or retraining to be self-sufficient.

"Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). The court considers the statutory factors in Iowa Code section 598.21A(1)[3] and makes an

---

[3] The factors found in section 598.21A(1) are as follows:
a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.
d. The educational level of each party at the time of marriage and at the time the action is commenced.
e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

equitable award of spousal support. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 538 (Iowa 2022). We will disturb the district court's award of spousal support "only when there has been a failure to do equity." *Gust*, 858 N.W.2d at 406 (citation omitted).

An award of spousal support may come within the categories of rehabilitative, reimbursement, traditional, transitional, or a hybrid of these types. *Pazhoor*, 971 N.W.2d at 539–40. Transitional spousal support was recently recognized by the Iowa Supreme Court,

> Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional alimony can be awarded to address that inequity and bridge the gap. We now formally recognize transitional alimony as another tool to do equity.

*Id.* at 542.

"Rehabilitative alimony is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-

---

the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

    f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

    g. The tax consequences to each party.

    h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

    i. The provisions of an antenuptial agreement.

    j. Other factors the court may determine to be relevant in an individual case.

supporting.'"  *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) (citation omitted).

On the spousal support issue, the district court stated:

> Brian has clearly been the primary breadwinner for the family. Their moves during the marriage were driven by his career advancement with [the retailer].  Chelsey's role, by agreement of the parties, has been, for the most part, as a homemaker and primary caretaker for the children.  She worked limited part-time hours during their various moves to avoid childcare costs.  She clearly supported Brian in his advancement opportunities with [the retailer].  He earns significantly greater income than Chelsey.
> This case presents a short to medium-term marriage of approximately 6 1/2 years.  Having considered all the relevant factors, the Court FINDS Brian should pay Chelsey transitional/rehabilitative alimony in the amount of $1000 per month for a period of three (3) years from entry of decree herein.  The Court finds this will assist Chelsey to become self-supporting and assist her in transitioning from married life to single life without undue hardship.

We concur in the court's reasoning.[4]  Chelsey supported Brian's quest to become a store manager by moving with him from town to town, at the expense of her own career.  The parties agreed Chelsey would only work part time so that the children did not need to be placed in daycare.  As a result of the parties' decisions, Brian has a much greater earning capacity than Chelsey.  And even working full-time hours, Chelsey's income will be a third of Brian's income.  The district court's decision awarding alimony for a limited period of three years does not fail to do

---

[4] We recognize the time limitation that the supreme court has placed on transitional alimony.  *See In re Marriage of Sokol*, 985 N.W.2d 177, 187 (Iowa 2023) *(*"Because transitional spousal support is focused on solving a short-term liquidity issue, a transitional spousal support award generally should not exceed one year in duration."); *see also In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997) ("An alimony award will differ in amount and duration according to the purpose it is designed to serve.").  Here, the district court crafted a hybrid alimony award of transitional and rehabilitative in determining alimony should be paid for three years.

equity and, therefore, we do not disturb the court's award of spousal support. *See Gust*, 858 N.W.2d at 406. We affirm the decision of the district court.

**VI.    Appellate Attorney Fees**

Chelsey asks for attorney fees for this appeal. She submitted an affidavit stating she has appellate attorney fees of $5650.

Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland,* 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted).

Chelsey has limited ability to pay her appellate attorney fees while Brian has the ability to contribute to Chelsey's attorney fees. We also note that Chelsey was required to defend the district court's decision on appeal. We conclude Brian should be required to pay Chelsey's appellate attorney fees of $5650.

**AFFIRMED.**