# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-0849
Filed February 25, 2026

_____

**E.H.,**
Petitioner–Appellant,

v.

**C.P.,**
Respondent–Appellee.

_____

Appeal from the Iowa District Court for Fayette County,
The Honorable Richard D. Stochl, Judge.

_____

**AFFIRMED AS MODIFIED**

_____

Jeremy L. Thompson of Thompson Casper P.L.L.C., Decorah, attorney for
appellant.

R.J. Longmuir of Peters and Longmuir, PLC, Independence, attorney for
appellee.

_____

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

Today we consider the visitation schedule for sixteen-year-old E.M.H. In a May 2022 bridge order, the juvenile court granted sole legal custody and physical care to her father, giving him "sole discretion" over the mother's visitation with their teenage daughter. After about a year, the mother, C.P., petitioned to modify that order, contending a material change in circumstances compelled the court to set a visitation schedule. Two months later, the father, E.H., petitioned to terminate C.P.'s parental rights under Iowa Code chapter 600A (2024).[1] The district court granted the mother's request for visitation and denied the father's termination petition.

The father appeals only the visitation order. He contends that the district court erred in finding a material change in circumstances to warrant modification. He also asserts that visitation with her mother is not in E.M.H.'s best interests. The mother defends the modification order, arguing the district court properly decided that the father should not have "veto power" over her visitation with E.M.H.

We appreciate the father's concerns about the visitation schedule given C.P.'s history of substance use and her inconsistency in showing up for their daughter. But, like the district court, we disapprove of the provision in the bridge order that delegates "sole discretion" to the father to determine the parameters of the mother's visitation. *See Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (explaining that custody orders "should not make the right of visitation contingent upon an invitation from the party having the

---

[1] Our supreme court found that this case involves confidential matters and ordered that the parties be identified by initials only.

custody of the child, . . . leaving the privilege of visitation entirely to the discretion of the party" with custody (citation omitted)).

In resolving this dispute, we adopt the father's proposed middle ground. As a start, we affirm the district court's conclusion that there was a material change of circumstances warranting a modification of the visitation provision. But, for the reasons below, we find that the overnight visits ordered by the district court are not in E.M.H.'s best interests. So we modify the ruling to eliminate those visits.

## I.  Facts and Prior Proceedings

This story started in juvenile court. In 2020, the Iowa Department of Human Services (DHS) investigated reports that C.P. was using methamphetamine and benzodiazepines while caring for E.M.H.[2] At that time, C.P. and then twelve-year-old E.M.H. were living with C.P.'s parents. In fact, E.M.H. had lived with her grandparents since she was five years old. In 2021, the department removed E.M.H. from her mother's care and placed her with E.H. The record shows that she has thrived in her father's care.

The juvenile court closed the child-welfare case with a bridge order in May 2022. That order awarded sole legal custody of E.M.H. to her father. It also granted him physical care and "sole discretion over visitation, including whether visits are to be supervised, semi-supervised, or unsupervised, and

---

[2] In December 2020, the mother gave birth to a son, L.P., who suffered withdrawal symptoms in the hospital. L.P. has a different father than E.M.H. The mother lost her parental rights to L.P., who was adopted by his maternal grandparents. The record shows that C.P. continues to see L.P. because they live in the same home. But C.P. testified that she does not care for him independently without her parents.

the time, frequency, location, and duration of the visits, between [C.P.] and the child as is in the child's best interests."

In the first few weeks after issuance of the bridge order, E.H. exercised his discretion by allowing E.M.H. to visit her mother under the supervision of her grandparents. But in June 2022, the grandparents allowed E.M.H. to take a golf cart ride with C.P., contrary to E.H.'s concerns about substance use and his express instructions about the visits. When E.H. found out about that excursion, he ended E.M.H.'s visits with her mother. E.H. described his concern for his daughter's safety:

> The golf cart thing, which has been brought up today. And how long it was, I don't know. Five minutes, ten minutes, half hour, something could have happened. I know it didn't, but how many times am I supposed to wait for, you know—I'd rather it not happen . . . .

After about a year of no visits with her daughter, C.P. petitioned to modify the visitation provision in the bridge order. Her petition alleged "a material change of circumstances has occurred for which the best interests of the parties' minor child requires a modification of prior orders for visitation." E.H. answered, asking the court to order C.P. "to allege with specificity what material changes have occurred." The parents mediated the issue without reaching a settlement.[3]

The court held a combined hearing on E.H.'s petition for termination of C.P.'s parental rights and C.P.'s petition to modify visitation. In addition to C.P. and E.H., witnesses included C.P.'s mother, father, brother, and aunt,

---

[3] The mother's counsel told the court that mediation "ended rather abruptly" when the father asked if the mother would agree to termination of her rights. When she declined, he asked for a release of information about her drug use.

as well as E.H.'s wife.[4] After weighing the evidence on both sides, the court denied E.H.'s petition, finding "no valid argument as to how terminating her mother's parental rights benefits E.M.H. in any way."

As for the issue before us, the court pointed to two developments, each qualifying as a material change in circumstances since the bridge order, to warrant modification of the visitation clause. First, the court believed that C.P. was "sober and not using drugs." Second, the court found "it could not have been anticipated that [E.H.] would actively attempt to sever any and all contact between the child, her mother and her grandparents." The court also decided it was in E.M.H.'s best interests "to have regular contact and visitation with her mother and family." From there, the court imposed a visitation schedule for E.M.H. that started with Saturday visits from 11:00 a.m. to 6:00 p.m., followed one month later by "stepped up" visits every other weekend from 6:00 p.m. Friday to 6:00 p.m. Sunday. The grandparents were to supervise.

E.H. moved to enlarge or reconsider under Iowa Rule of Civil Procedure 1.904(2), taking issue with the court's finding that C.P. was sober when she admitted in her testimony that she had used drugs in the past six months. E.H. also objected to the court's reference to regular contact with the "mother *and family*" noting the lack of statutory basis for visitation with grandparents. The court denied the motion to reconsider but clarified its finding to say C.P. was "not actively using" at the time of the trial. As for the reference to C.P.'s family, the court explained: "It is in the best interest of the

---

[4] The stepmother testified that she planned to adopt E.M.H. if the court granted termination of C.P.'s parental rights. The court also heard from Trevor Hurd, E.M.H.'s guardian ad litem in the termination case. Hurd said E.M.H. had "conflicting desires" but had a very positive relationship with her stepmother.

minor child to have contact with her mother. Contact with her extended family flows from those visits. The court is not awarding grandparent visitation."

E.H. appeals the modified visitation order.

## II.     Scope and Standard of Review

"Petitions to modify custody orders lie in equity and are reviewed de novo." *Venechuk v. Landherr*, 20 N.W.3d 471, 475 (Iowa 2025). We "examine the entire record and adjudicate anew rights on the issues properly presented." *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). We are not bound by the district court's factual findings. *In re Marriage of Drury*, 475 N.W.2d 668, 670 (Iowa Ct. App. 1991). But we do give them weight, especially regarding witness credibility. *Id.* On that score, a trial court "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." *Id.* (citation omitted).

## III.    Analysis

In custody cases, courts must order visitation "where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). Interpreting that statute, our case law reflects a strong preference for liberal visitation. *Id.*; *see Smith*, 142 N.W.2d at 425 ("The rule is well established in all jurisdictions that the right of access to one's child should not be denied unless the court is convinced such visitations are detrimental to the best interest of the child. In the absence of extraordinary circumstances, a parent should not be denied the right of visitation." (citation omitted)).

When it comes to modification, the petitioning party, here C.P., must show by a preponderance of the evidence that there has been a material change in circumstances since the filing of the decree and that the requested change in visitation is in the child's best interests. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). Notably, the burden for parents seeking to modify a visitation provision is less demanding than the burden to change custody. *Id.* at 96.

E.H. argues, "The District Court improperly concluded that a material change in circumstances occurred that warranted a modification of the visitation schedule." Trouble is, there was no visitation schedule in the bridge order. The juvenile court gave unfettered discretion to E.H. to dictate any visitation opportunities for C.M. Our court has repeatedly concluded that delegating visitation decisions to another parent is improper.[5] *See In re Marriage of Jenkins*, No. 22-0656, 2023 WL 382301, at *3 (Iowa Ct. App. Jan. 25, 2023); *In re Marriage of Kanetomo*, No. 19-2008, 2020 WL 5650593, at *3 (Iowa Ct. App. Sep. 23, 2020); *In re Marriage of Retterath*, No 14-1701, 2015 WL 6509105, at *4 (Iowa Ct. App. Oct. 28, 2015); *see also In re Marriage of Stephens*, 810 N.W.2d 523, 530–31 (Iowa Ct. App. 2012) (modifying an order giving the children's therapist discretion to increase visitation stating, "the district court is the only entity that can modify a . . . visitation order").

To the contrary, absent a finding that visitation is not in the child's best interests, juvenile courts must "safeguard[]" the noncustodial parent's

---

[5] E.H. acknowledges in his reply brief that "a grant of sole discretion over visitation may be contrary to Iowa law." But he insists that he had not "arbitrarily dictated visitation" as the mother contends. Rather, he suggests that his "visitation schedule" was "a continuation of the recommendations made by DHS." But again, there was no visitation schedule and interactions "functionally stopped" after the golf cart incident. In the mother's words, E.H. and his wife "don't want me in the picture at all."

7

"feasible exercise of [their] right of visitation . . . by a definite provision" in the custody order. *Smith*, 142 N.W.2d at 425 (citation omitted). So that aspect of the bridge order was unsound and ripe for modification. *See Stephens*, 810 N.W.2d at 530 (raising on its own motion the illegality of the visitation provision on father's petition for writ of certiorari on his contempt finding); *see also In re Marriage of Hute & Baker*, No. 17-0046, 2017 WL 3283382, at *3–5 (Iowa Ct. App. Aug. 2, 2017) (rejecting modification request when custody order set visitation to "the terms and conditions established" in a then-pending child-in-need-of-assistance proceeding, the petitioner never offered the terms into the record, and had not attempted to exercise that visitation in over a decade).

*A material change in circumstances*. On this record, C.P. met her reduced burden to show a material change in circumstances to justify modifying the flawed visitation provision. As noted above, the district court pointed to two circumstances warranting modification. On the first circumstance, C.P.'s sobriety, we share the father's skepticism. The district court overstated the mother's progress with her substance use. Indeed, the mother admitted recently using drugs. The mother also testified that she still intended to go to residential treatment but did not provide details.[6] And when asked if C.P. continued to use drugs, the grandmother was unsure: "I don't know. . . . I have never seen her using."

But on the second circumstance, the father's "active attempt to sever any and all contact" between E.M.H. and the mother, we agree with the district court. The father's denial of visitation, untethered to any specific information about the mother's current substance use, was not contemplated

---

[6] C.P. acknowledged telling her daughter of that intent in the past and her daughter being disappointed when she didn't follow through with treatment.

even by the wide-open visitation provision in the bridge order. This matter merits consideration of the modification request. *See generally In re Marriage of Quirk–Edwards,* 509 N.W.2d 476, 480 (Iowa 1993) (unjustified denial of visitation can provide adequate grounds for change in custody).

*Best interests.* Having found a material change in circumstances not contemplated by the bridge order, we turn to E.H.'s claim that visitation with C.P. was not in the best interests of their daughter. In his appellant's brief, he does not argue that all visitation would harm E.M.H. He is more measured, urging that the modified schedule is too sweeping a change in the teenager's routine. He asserts: "Since the bridge order E.M.H. has never spent an overnight in the care of [C.P.]. The drastic increase in overnight visits was not in E.M.H.'s best interest, as the child has become accustomed to the stability and routine her father provides." Finally, the father balks at the court tapping the maternal grandparents to supervise the visitation. The father asserts that they have had difficulty acknowledging their daughter's substance-use issues and failed to abide by his "safety requests" in the past.

We agree with the father to a degree. Consistent with precedent, some visitation with her mother is appropriate to ensure that E.M.H. has "the opportunity for the maximum continuing physical and emotional contact with both parents" discussed in section 598.41(1)(a). But the lingering concern about the mother's substance use calls for a more modest schedule. Ordering overnight visitation with the mother was not in E.M.H.'s best interests. For starters, C.P. didn't ask for overnights. In her testimony, she expressed a basic desire for "any sort of consistent regular [visitation] schedule." By contrast, E.H. was vehement that overnight visitation was too risky given C.P.'s unaddressed substance use. We agree too many questions remained about C.P.'s drug use to allow overnight visits, even with a teenager

who is more capable of self-protection than a younger child, and even if supervised by the grandparents.

Yet, on the issue of supervision, we reject the father's argument that the district court erred in naming the maternal grandparents as supervisors. The court saw the grandparents testify and had "no concerns about the safety of E.M.H." while in their care. We defer to that finding. This finding is reinforced because the grandparents adopted E.M.H.'s half-brother, and visitation at their home provides valuable sibling interaction. *See generally In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (applying general rule that courts try to keep siblings together to half-siblings).

As our bottom line, we affirm the district court's finding of a material change of circumstances warranting modification of visitation. But we modify the district court's schedule to eliminate overnight visits. As a result, visitation with C.P. will be alternating Saturdays from 11:00 a.m. to 6:00 p.m. In accordance with E.H.'s request in his briefing, those alternate Saturdays will be set so that E.M.H. remains in her father's care on the weekends that he is scheduled to have visitation with his other children. We agree with E.H. that it is in his daughter's best interest to have maximum sibling contact. We also modify the holiday visitation schedule to eliminate overnight visits for C.P.[7] All other provisions of the court's April 2025 ruling will remain intact.

**AFFIRMED AS MODIFIED.**

---

[7] That change means C.P. will have visitation with E.M.H. from 11:00 a.m. to 6:00 p.m. on Christmas Day and New Year's Day in even numbered years and visitation from 11:00 a.m. to 6:00 p.m. on Christmas Eve in odd numbered years. She will have visitation from 11:00 a.m. to 6:00 p.m. on Easter, Independence Day, and Thanksgiving Day in odd numbered years and on Memorial Day and Labor Day in even numbered years. We do not disturb the ruling's specifications for birthdays and Mother's Day.